A98A0295. MEADOW RIVER LUMBER COMPANY et al.
v. UNIVERSITY OF GEORGIA RESEARCH FOUNDATION, INC.
(503 SE2d 655)

BEASLEY, Judge.

Meadow River Lumber Company and Curlpak, Inc. (appellants) are licensee and sub-licensee respectively to certain exclusive rights to two patents owned by University of Georgia Research Foundation related to an apparatus and method for making curled wood flakes which are used in the potpourri industry. After learning of alleged use of the device more than one year prior to the Foundation's application for the patents, appellants brought suit alleging the Foundation breached the patent licensing agreement, committed fraud in the inducement, and is liable to indemnify appellants against claims of other sub-licensees who relied on the validity of the patent. The

Foundation filed a motion to dismiss under OCGA § 9-11-12 (b) (6) which was converted into a motion for summary judgment under OCGA § 9-11-56 and granted on all counts.

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[1] The evidence is construed most strongly against the movant.[2]

In appellants' favor is evidence that on May 26, 1992, the Foundation licensed to Meadow River the exclusive right to make, use, and sell "wood curls" produced on the patented machine in the United States. An amendment gave Meadow River a worldwide exclusive license to make, have made, use and lease the patented equipment.[3] As authorized by the agreement, Meadow River sublicensed the rights to Curlpak and two others. Curlpak further sublicensed its rights.

On March 21, 1995, Meadow River became aware of facts upon which it bases a claim that the patents were never valid in that allegedly they had been exploited commercially more than one year in advance of the patent application. Since that time, Meadow River has demanded that the Foundation take steps to stop any infringing use of the patents. On August 8, 1996, Meadow River and Curlpak filed this suit. Meadow River has not made any royalty payments since February 1994, and the Foundation counterclaimed alleging breach of contract for this and other reasons.

Certain background matters set this case in context.

(a) State court jurisdiction involving patents.

Federal district courts have original jurisdiction of "any civil action arising under any Act of Congress relating to patents,"[4] but that jurisdiction is narrowly defined to include only "those cases in which a well-pleaded complaint establishes either that federal patent law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims."[5] The test requires that patent law be essential

---

[1] OCGA § 9-11-56 (c).

[2] *Burnette Ford v. Hayes*, 227 Ga. 551 (181 SE2d 866) (1971); *Virgil v. Kapplin*, 187 Ga. App. 206, 207 (1) (369 SE2d 808) (1988).

[3] A patent confers certain rights on the patent holder (or patentee), including the exclusive right to make, use and sell an invention, the right to transfer those rights, and the right to sue infringers. Rosenberg, Patent Law Fundamentals, Vol. 3, § 16.01 [1], p. 16-4; Black's Law Dictionary, 5th ed.

[4] 28 USC § 1338 (a).

[5] *Christianson v. Colt Indus. Operating Corp.*, 486 U. S. 800, 809 (108 SC 2166, 100 LE2d 811) (1988).

to each of several alternative theories of recovery under at least one claim for federal jurisdiction to exist.[6] Where no federal jurisdiction exists, state courts may address questions of patent validity.[7]

The United States District Court for the Middle District of Georgia already determined that it did not have jurisdiction over Meadow River's claims. It held that though the claims "may relate to patents," they are state law claims and belong in state court. Meadow River did not appeal this decision.

(b) Application of Georgia law.

Patents are based exclusively on federal law, and state courts are advised to look to the decisions of the Circuit Court for the Federal Circuit for guidance on questions involving patent law.[8] But patent licenses are not governed by the patent act.[9] Accordingly, the construction of patent license agreements is solely a matter of state law.[10]

Under Georgia law, two actions are available to one who was fraudulently induced by misrepresentations into entering a contract: affirm the contract and sue for breach or seek to rescind and sue in tort for fraud and deceit.[11] Appellants assert both claims. Although appellants' brief is written as if Meadow River and Curlpak stood on equal footing, Meadow River is the only party in a direct contractual relationship with the Foundation. Curlpak, a sub-licensee of Meadow River, has no standing to bring any of these claims.

1. In Count 1 of its complaint, Meadow River alleges the Foundation breached the licensing agreement by failure of consideration because "the patents that are the subject matter of the . . . agreement and the sole consideration provided by the Foundation were improperly issued, and are unenforceable and of no value whatsoever." This contention is based on the contention that the product was in public use or on sale more than one year prior to the date of the application for the patents, which, if it had been disclosed to the Patent Office, would have been fatal to a patent application under federal law,[12] and that therefore the patents are invalid. For the purpose of this appeal we accept as true that the evidence presents a question of fact as to whether prior use or sale of the device should have pre-

---

[6] Id. at 810; *American Tel. &c. Co. v. Integrated Network Corp.*, 972 F2d 1321, 1324 (Fed. Cir. 1992).

[7] See *Lear, Inc. v. Adkins*, 395 U. S. 653, 670 (89 SC 1902, 23 LE2d 610) (1969).

[8] See *American Tel. &c. Co.*, supra, 972 F2d at 1325.

[9] Rosenberg, Patent Law Fundamentals, Vol. 3, § 16.01 [1] [b], p. 16-15 (2nd ed. 1998 rev.).

[10] *Lear, Inc.*, supra, 395 U. S. at 661-662.

[11] *City Dodge v. Gardner*, 232 Ga. 766, 768 (208 SE2d 794) (1974). Accord *Brown v. Techdata Corp.*, 238 Ga. 622 (234 SE2d 787) (1977).

[12] See 35 USC § 102 (b).

vented acceptance of the patent application by the Patent Office under 35 USC § 102 (b) or otherwise rendered the patent invalid.

But Meadow River did not bargain for a warranty of patent validity. "A mere license is not deemed to constitute any interest in the patent. A license is but a promise by one having an interest in a patent to forbear from suing one who would commit what would be, but for the license, an infringement of that interest."[13] As stated by the Supreme Court, "a manufacturer gains only two benefits if he chooses to enter a licensing agreement. . . . First, . . . the licensee may have avoided the necessity of defending an expensive infringement action during the period when he may be least able to afford one. Second, the existence of an unchallenged patent may deter others from attempting to compete with the licensee."[14]

In accord with the definition of a patent license, Meadow River's license agreement makes no representations about the validity of the patents. On appeal, appellants now admit that they "did not bargain for patents warranted to be valid, instead, they bargained for patents that were not known by [the Foundation] to be invalid." Because validity of the patent is not part of the consideration, there is no claim for failure of consideration as a matter of law.

Further, any claim of breach of warranty regarding the validity of the patent or the nature of the rights obtained is precluded by the terms of the license agreement. As noted by the trial court, the license expressly disclaims any representations or warranties associated with the patents. The license states "[THE FOUNDATION] MAKES NO Representation OR WARRANTY OF ANY KIND WITH RESPECT TO THE LICENSED PATENTS OR LICENSED TECHNOLOGY AND EXPRESSLY DISCLAIMS ANY WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE AND ANY OTHER IMPLIED WARRANTIES WITH RESPECT TO THE CAPABILITIES, SAFETY, UTILITY, OR COMMERCIAL APPLICATION OF LICENSED PATENTS OR LICENSED TECHNOLOGY." The license agreement also contains a clause which states that the agreement "constitutes the entire agreement between [the Foundation] and LICENSEE with respect to the subject matter hereof and shall not be modified, amended or terminated except as herein provided or except by another agreement in writing executed by the parties hereto."

Meadow River urges that the second clause is not a "merger clause." A merger clause typically includes a provision which merges

---

[13] (Citations omitted.) Rosenberg, supra, § 16.01 [1] [b], p. 16-13.

[14] *Lear, Inc.*, 395 U. S. at 669. This later point is especially true in the case of an exclusive license. See id. at n. 16. An exclusive license precludes the licensor from granting any other license. Rosenberg, supra, § 16.01 [1] [b], p. 16-14.

into the agreement any prior representations between the parties.[15] But Meadow River does not complain about alleged prior representations or understandings. The provisions quoted above bar all aspects of Meadow River's breach of contract claim. Where "the allegedly defrauded party elected to affirm the contract, that party is bound by the contract's terms and is subject to any defenses which may be based on the contract."[16]

Meadow River argues its claim survives application of the disclaimer and entire agreement clause. It quotes *SCM Corp. v. Thermo Structural Products*:[17] "Even though a party electing to affirm a contract is ordinarily bound by a merger clause contained therein [cits.], a merger clause is without application where the fraud allegedly perpetrated concerned intrinsic defects in the article forming the subject matter of the contract and was such as to prevent the defrauded party from exercising its own judgment. [Cits.]"

As stated in the quotation, this rule applies only where there is an intrinsic defect and the seller has prevented the purchaser from exercising his own judgment.[18] That has not happened here. There is no intrinsic defect in what Meadow River received. The nature of a patent and a patent license simply does not include a warranty of validity of the patent.

Meadow River argues in support of its breach of contract claim that although the Foundation did not make any warranty of validity, it licensed patents which it knew to be invalid.

This theory addresses the concept of passive concealment similar to that used in connection with the purchase and sale of real estate. In real estate transactions, there is an exception to the general rule of caveat emptor which "places upon the seller a duty to disclose in situations where he or she has special knowledge not apparent to the buyer and is aware that the buyer is acting under a misapprehension as to facts which would be important to the buyer and would probably affect its decision" if such action constitutes fraud.[19]

---

[15] See, e.g., *Gaines v. Crompton & Knowles Corp.*, 190 Ga. App. 863, 866 (4) (C) (380 SE2d 498) (1989); see also *Health Svc. Centers v. Boddy*, 257 Ga. 378, 380 (359 SE2d 659) (1987) (basis of merger is "all prior negotiations, understandings, and agreements on the same subject are merged into the final contract, and are accordingly extinguished").

[16] *Hightower v. Century 21 Parish Realty*, 214 Ga. App. 522, 523-524 (1) (448 SE2d 271) (1994); *Ben Farmer Realty Co. v. Woodard*, 212 Ga. App. 74, 75 (441 SE2d 421) (1994); see also *Carpenter v. Curtis*, 196 Ga. App. 234, 236-237 (395 SE2d 653) (1990). See also *Potomac Leasing Co. v. Thrasher*, 181 Ga. App. 883, 886 (354 SE2d 210) (1987), citing *Roth v. Bill Heard Chevrolet*, 166 Ga. App. 583 (305 SE2d 31) (1983) (merger clause defeats fraud claim if contract affirmed); *Joseph Charles Parrish, Inc. v. Hill*, 173 Ga. App. 97, 99-100 (5) (325 SE2d 595) (1984) (either merger or disclaimer provision).

[17] 153 Ga. App. 372, 373 (265 SE2d 598) (1980).

[18] Id.

[19] *Wilhite v. Mays*, 140 Ga. App. 816, 818 (3) (232 SE2d 141) (1976), aff'd, 239 Ga. 31

Passive concealment does not apply to a breach of contract action but rather to one for fraud.[20] Meadow River's fraud claim is addressed in Division 2.

Even if the theory had been urged in connection with the charge of fraud, the result would be the same.

We see no grounds for extending this exception to the general rule of caveat emptor to patent license agreements. The *Wilhite*-applied exception is limited " 'to controversies between residential homeowners and residential builder/sellers' "[21] and "is concerned with concealed defects that purchasers in the exercise of due diligence could not detect. 'It is only when the defects in the property are of a nature that the buyer could not discover them through the exercise of due diligence that any burden is placed on the seller to disclose the seriousness of the problems of which he is aware, provided the seller knows that the buyer is acting under a misapprehension as to the facts which would be important to the buyer in making his decision. (Cit.)' [Cit.]"[22]

No evidence shows that, through the exercise of due diligence, Meadow River could not have discovered all the information about the early possible commercial exploitation of the device that it alleges supports its cause of action.

The court properly granted summary judgment as to Meadow River's claim for damages and as to Curlpak.

2. Count 2 of Meadow River's complaint is a claim in tort for fraud.[23] "One who seeks rescission of a contract for fraud must restore or offer to restore the consideration received thereunder, as a condition precedent to bringing the action [cit.]; however, restoration by the purchaser is not an absolute rule, and does not require that the defrauding party be placed in exact status quo, but only that he be placed substantially in his original position and that the party rescinding derives no unconscionable advantage from the rescission.

---

(235 SE2d 532) (1977) (adding emphasis on fraud).

[20] Id.; *Deckert v. Foster*, 230 Ga. App. 164 (495 SE2d 656) (1998).

[21] *Armstrong Transfer &c. Co. v. Mann Constr.*, 217 Ga. App. 538, 539 (1) (458 SE2d 481) (1995).

[22] *Smalls v. Blueprint Dev.*, 230 Ga. App. 556, 557-558 (1) (497 SE2d 54) (1998).

[23] See, e.g., *Transitron Electronic Corp. v. Hughes Aircraft Co.*, 649 F2d 871, 874-875 (1st Cir. 1981) (licensee may recover when the patent holder has induced the licensee to enter into the license agreement through fraud). See *Lear, Inc.*, supra, 395 U. S. at 668-671 (licensee not estopped to challenge the validity of the licensed patent in a suit for recovery of royalties).

Historically a patent licensee was estopped to challenge the validity of the patent so long as he was operating under the license agreement. *Automatic Radio Mfg. Co. v. Hazeltine Research*, 339 U. S. 827, 836 (70 SC 894, 20 LE2d 651) (1950). "A patent, in the last analysis, simply represents a legal conclusion reached by the Patent Office." *Lear, Inc.*, supra, 395 U. S. at 670. But in the landmark case of *Lear, Inc. v. Adkins*, the Supreme Court held that a licensee is not estopped to assert the invalidity of the patent. Id. at 670-671.

[Cits.] One seeking to rescind a contract for fraud must restore or tender back the benefits received under the contract, or show a sufficient reason for not doing so; he need not tender back what he is entitled to keep, and need not offer to restore where the defrauding party has made restoration impossible [cit.], or when to do so would be unreasonable. [Cits.]"[24] The defrauded party must act promptly.[25]

The Foundation asserts that Meadow River has not rescinded the license agreement because it never offered or tendered to the Foundation the benefits it received under the contract, i.e., the licensed technology and the right to use it, and therefore is not entitled to sue in tort for fraudulent inducement. Meadow River did not request rescission in its complaint, nor did it allege rescission was impossible. "Critical to rescission is the tender of benefits, the prompt restoration or offer to restore whatever the complaining party received by virtue of the contract. OCGA § 13-4-60; [cits.]."[26]

Meadow River concedes it failed to tender or offer to tender the benefits it received but instead argues it was excused in that (1) "[s]ince the patents are of no value, to return what was obtained under the License Agreement is unnecessary,"; and (2) rescission is not possible because appellants have sub-licensed the patents. Meadow River's arguments are inconsistent, unsubstantiated and without merit. The license agreement gives Meadow River an unrestricted right to terminate the agreement at any time. Although Meadow River has sub-licensed the patent rights to Curlpak and others, it provides no evidence that these sub-licenses restrict its right to terminate the license with the Foundation. Its mere assertion is an insufficient response to the motion for summary judgment.

Further, the sub-licenses, including Curlpak's, contain a provision permitting Meadow River to freely assign the agreement without the consent of the sub-licensee. Appellants have not explained why they could not assign the sub-licenses back to the Foundation. Their argument that the sub-licenses prohibit rescission belies their contention that the patents are without value. If the patents have no value, then what have appellants sub-licensed? *Crews v. Cisco Bros.*[27] is distinguishable because Meadow River does not contend and has not shown it is unconditionally obligated to the sub-licensees.

In fact, rather than rescinding, Meadow River has affirmed the license. After March 21, 1995, the day Meadow River admits it knew the facts upon which the allegations of fraudulent inducement are based, it began demanding that the Foundation "immediately end

[24] *Crews v. Cisco Bros. Ford-Mercury*, 201 Ga. App. 589 (1) (411 SE2d 518) (1991).
[25] OCGA § 13-4-60.
[26] *Carpenter v. Curtis*, supra, 196 Ga. App. at 237.
[27] 201 Ga. App. at 590 (1).

the infringement of the patents," and it continued to sub-license the patent technology. "Where a party who is entitled to rescind a contract on ground of fraud or false representations, and who has full knowledge of the material circumstances of the case, freely and advisedly does anything which amounts to a recognition of the transaction, or acts in a manner inconsistent with a repudiation of the contract, such conduct amounts to acquiescence, and, though originally impeachable, the contract becomes unimpeachable in equity. If a party to a contract seeks to avoid it on the ground of fraud or mistake, he must, upon discovery of the facts, at once announce his purpose and adhere to it. Otherwise he can not avoid or rescind such contract."[28]

Summary judgment on appellants' claim in tort for fraudulent inducement was properly granted.

3. Count 3, appellants' claim for indemnification, is dependent on the others, and therefore summary judgment on that claim was also proper.

*Judgment affirmed. Pope, P. J., and Ruffin, J., concur.*

DECIDED JUNE 30, 1998 — 

*Cook & Connelly, Bobby Lee Cook, James E. Spence, Jr.,* for appellants.

*Chilivis, Cochran, Larkins & Bever, Nickolas P. Chilivis, Anthony L. Cochran, John K. Larkins, Jr.,* for appellee.

---

[28] *Gibson v. Alford,* 161 Ga. 672, 673, hn. 5 (132 SE 442) (1926); *Owens v. Union City Chrysler-Plymouth,* 210 Ga. App. 378, 380 (436 SE2d 94) (1993). See also *Orion Capital Partners v. Westinghouse Elec. Corp.,* 223 Ga. App. 539, 543 (2) (a) (478 SE2d 382) (1996) (plaintiff took actions incompatible with contract rescission).