A99A0093. WENDER & ROBERTS, INC. et al. v. WENDER.
(518 SE2d 154)

JOHNSON, Chief Judge.

William Wender and Donald Wender are brothers. They were major shareholders of Wender & Roberts, Inc. ("the company"), founded by their father, which owned and operated a chain of retail drugstores. Donald Wender was the president of the company. In order to avoid confusion over the brothers' names, in this opinion William Wender will be referred to as "Wender," and Donald Wender will be referred to as "the president."

Wender had been embezzling money from the company. The president discovered the theft and asked Wender to resign his positions as a corporate officer, director and employee. The brothers and the company entered into a settlement agreement resolving all issues

between them. Under the terms of this settlement agreement, Wender agreed to resign. In addition to resigning, the agreement required that Wender sell his stock to the company for significantly less than its market value. The agreement required the company to pay him for the stock in 120 monthly installments of $1,000 each. The agreement also required Wender to provide consulting services to the company at its request. In exchange for these consulting services, the company was required to pay Wender $45,000 per year from 1992 through 1996, and thereafter $20,000 per year through the end of 2001. The agreement further required the company to keep Wender's health insurance and life insurance benefits in effect until the end of 2001.

The company paid Wender pursuant to the settlement agreement until 1995, when it stopped making payments for his consulting services. Wender sued the company and his brother, the president, for those payments. After Wender filed the lawsuit in 1996, the company also stopped making the $1,000 monthly payments due under the stock purchase portion of the settlement agreement. Wender then amended his complaint to seek recovery of both the unpaid consulting fees and the monthly stock purchase payments. The company and the president counterclaimed, alleging, among other things, fraud and breach of contract. They also sought rescission of the settlement agreement. Wender moved for summary judgment on both his complaint and the counterclaims. The trial court granted his motion as to all claims. The company and the president appeal, challenging the grant of summary judgment to Wender on his claims and on the counterclaims for fraud, breach of contract and rescission.

Summary judgment is appropriate when no genuine issues of material fact remain and the moving party is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). When ruling on a summary judgment motion, the opposing party must be given the benefit of all reasonable doubt, and the court must construe the evidence and all inferences and conclusions arising therefrom most favorably toward the party opposing the motion. *Moore v. Goldome Credit Corp.*, 187 Ga. App. 594, 596 (370 SE2d 843) (1988). A party opposing a motion for summary judgment is entitled only to the benefit of reasonable inferences; unreasonable inferences have no probative value. *Sharfuddin v. Drug Emporium*, 230 Ga. App. 679, 683 (3) (a) (498 SE2d 748) (1998). Thus, an inference cannot be based on mere conjecture or possibility or upon evidence which is too uncertain or speculative. Id.

Construed in favor of the president and the company, the evidence in this case shows that Wender is entitled to summary judgment on his claim for the monthly payments under the stock

purchase agreement and on their counterclaims, but is not entitled to summary judgment on his claim for consulting fees. Accordingly, the rulings of the trial court are affirmed except as to the grant of summary judgment to Wender on his claim for consulting fees, which is reversed.

1. The company and the president assert that Wender is not entitled to summary judgment on his claim for consulting fees because on several occasions when he was requested to provide required consulting services he declined or otherwise failed to provide the requested services. Having reviewed the record, we agree that there are genuine issues of material fact as to whether the company is obligated to pay the consulting fees.

In an affidavit submitted to the trial court in response to Wender's motion for summary judgment, the president stated that on two separate occasions, one involving a dispute with an employee and another involving a dispute with a company landlord, Wender was requested by the company to provide consulting services but declined. Less specifically, the president further stated that there were other instances since 1991 when the company tried to use Wender's services but he was unwilling or unable to help. On the other hand, in his affidavit Wender states that he never declined or refused to provide consulting services to the company.

These conflicting affidavits create genuine issues of material fact as to whether Wender provided consulting services as required by the settlement agreement. Accordingly, summary judgment to him on the count of his complaint seeking payment for consulting services was erroneous and is reversed. OCGA § 9-11-56; *City of Acworth v. John J. Harte Assoc.*, 165 Ga. App. 438, 439 (2) (301 SE2d 499) (1983).

2. The company and the president contend the court should have found that the settlement agreement is unenforceable under the terms of an exhibit attached to it which provides that if Wender "materially omitted or understated the facts concerning [his] actions against the Company, then the Company's release shall be null and void." The president and the company claim that Wender understated the amount of money he embezzled from the company, and thus, they argue, the settlement agreement is null and void.

Contrary to their claim, there is no evidence in the record before us that Wender understated the amount of money taken. In fact, the president and the company have cited no evidence that Wender ever stated how much he took. During its investigations prior to the settlement, the company discovered approximately $300,000 had been embezzled. With that information in hand, the company decided to settle the matter quickly and without further investigation. The company and the president point to no evidence that Wender told

them the discovered loss of $300,000 was the entire amount of money taken. Rather, the evidence shows only that Wender does not know how much money he actually took. The fact that the company and the president now believe that more than $300,000 may have been stolen is not proof that Wender misrepresented the amount, nor is it sufficient to create a genuine issue of material fact.

Moreover, the exhibit upon which the company and the president rely did not require Wender to reveal or even estimate how much money he embezzled. By its plain terms, the exhibit is simply Wender's description of four different methods he used to embezzle company funds. In the exhibit, there is no representation by Wender as to the full amount of money taken. Likewise, there is no statement anywhere in the settlement agreement that the agreement is premised on Wender's full disclosure of the exact amount of money he embezzled.

Accordingly, the claim that the settlement agreement is unenforceable on the basis that it is null and void because Wender understated the amount of money taken is not supported by the evidence. The trial court's finding that the agreement is enforceable is therefore affirmed.

3. The president claims the agreement is ambiguous as to whether he is personally liable to Wender and that this ambiguity requires resolution by a jury. This argument is unpersuasive given the plain language of the contract.

The agreement, which Donald Wender signed in both his official capacity as company president and his personal capacity, provides:

> The Company and DW [Donald Wender] hereby agree to indemnify and hold harmless WW [William Wender] from and against any and all losses, liabilities, costs, damages, and expenses (including but not limited to reasonable attorney's fees) incurred by WW arising out of: (i) any breach of any term, condition or covenant of this Agreement by the Company or DW. . . .

This clear and unambiguous language obligates the president personally to indemnify Wender for losses caused by a breach of the agreement. Because the plain and unambiguous terms of the agreement are controlling, we need look no further to determine the intention of the parties regarding Donald Wender's personal liability. See *Terry v. State Farm &c. Ins. Co.*, 269 Ga. 777, 778-779 (2) (504 SE2d 194) (1998). The trial court did not err.

4. The president and the company complain that the settlement agreement is unenforceable because they were fraudulently induced into signing it by Wender's misrepresentation of the full amount of

money embezzled. Because of the alleged fraud, they conclude that the court should have denied summary judgment to Wender on both his complaint and on their fraud counterclaim. We disagree.

There are five elements to a claim of fraud: (i) false representation; (ii) scienter; (iii) intention to induce another to act or refrain from acting; (iv) justifiable reliance; and (v) damage. *Smalls v. Blueprint Dev.*, 230 Ga. App. 556, 559 (1) (497 SE2d 54) (1998). In the record before us, there is no evidence of either a false representation by Wender or justifiable reliance by the president and the company.

As discussed in Division 2, the president and the company have failed to show by any evidence in the record that Wender misrepresented the full amount of money taken. However, they contend that because the Wenders had a fiduciary relationship when the settlement agreement was executed, Wender had an obligation to disclose the full extent of his embezzlement, and that his failure to do so amounts to a misrepresentation. This contention is without merit.

Although OCGA § 23-2-53 provides that it constitutes fraud to suppress a material fact when a party is under an obligation to communicate it to another, in this instance Wender had no obligation to communicate the full extent of his embezzlement because he did not have a fiduciary relationship with Donald Wender and the company when the settlement agreement was signed. The opinion in *Harish v. Raj*, 222 Ga. App. 248 (474 SE2d 624) (1996), is instructive. Contrary to the claims of the president and the company, a confidential and fiduciary relationship is not presumed between brothers or close friends. Id. at 250 (1). This is particularly true when one of the brothers is aware that the other has embezzled substantial amounts of money from their family business and where that particular misconduct is the very subject under investigation.

As in *Harish*, the Wenders dealt with each other at arm's length and did not blindly rely upon representations made by one another when preparing and executing the settlement agreement. Before the agreement was signed, the president and the company conducted a thorough in-house investigation, were fully aware that certain corporate records were missing, hired an accounting firm to examine the available corporate records, and were fully aware that Wender had taken at least $300,000 of company funds. Moreover, Wender, the president and the company retained attorneys to represent their respective interests during the negotiation and execution of the agreement. Under these circumstances, although the Wenders " 'may have owed each other a fiduciary duty in other respects, there is no basis in this case for an inference that a fiduciary or confidential relationship existed between them *with respect to the transaction at issue*.' [Cit.]" (Emphasis in original.) *Harish*, supra at 251 (1). Under the circumstances of this case, because no fiduciary relationship

existed with respect to the execution of the settlement agreement, Wender had no legally enforceable obligation to disclose the full amount of money he embezzled, and his silence does not amount to a misrepresentation.

Furthermore, even if we assume that by his silence Wender misrepresented the amount of money taken from the corporation, the element of justifiable reliance is not shown by any evidence in the record. In order for a genuine issue of material fact to exist as to justifiable reliance, there must be some evidence that the president and the company exercised their duty of due diligence to ascertain the truth of the matter and to avoid damage. *Fowler v. Overby*, 223 Ga. App. 803, 804 (1) (478 SE2d 919) (1996). Although questions of due diligence often must be resolved by the trier of fact, that is not always the case. A party may fail to exercise due diligence as a matter of law. Id.

In this case, the president and the company executed the agreement without requiring Wender, as conditions of the settlement, to disclose the location of the missing financial records or to tender any written estimate of the total amount of money he had embezzled. Nor did they seek to delay execution of the settlement agreement until they could obtain a more accurate accounting. Under these circumstances, any reliance by the president and the company on the allegedly limited disclosures made by Wender must be considered unjustified as a matter of law. See *Consulting Constr. Corp. v. Edwards*, 207 Ga. App. 296, 297-298 (1) (427 SE2d 789) (1993).

Because two essential elements of the claimed fraudulent inducement are missing, the trial court did not err in rejecting fraud as a defense to summary judgment on Wender's complaint and in granting summary judgment to Wender on the fraud counterclaim.

5. Donald Wender and the company claim that genuine issues of material fact exist as to their counterclaim for rescission of the contract. No such issues exist.

A party seeking to rescind a contract for fraud must restore or tender back the benefits received under the contract, or show a sufficient reason for not doing so. A party rescinding a contract is not required to return consideration when to do so would be unreasonable or impossible. Restoration does not require that the other party be placed in the exact situation it was in before the contract, but only that it be placed substantially in its original position. The rescinding party must derive no unconscionable advantage from the rescission. *Meadow River Lumber Co. v. Univ. of Ga. &c.*, 233 Ga. App. 169, 174-175 (2) (503 SE2d 655) (1998); *Intl. Software &c. v. Atlanta Pressure &c. Co.*, 194 Ga. App. 441-442 (390 SE2d 659) (1990); OCGA § 13-4-60.

The president and the company have made no showing that they

offered to restore to Wender the benefits they have received under the contract. Although we do not believe they were required to offer to return Wender to his positions with the company, in order to rescind the contract they were required to make some offer regarding the stock that Wender sold to them at a significantly reduced price, such as returning it to him for the money already paid or offering to pay him the full value of the stock. Any lesser offer of restoration would not put Wender in substantially the same position as before the agreement.

Furthermore, the attempt of the president and the company to rescind the agreement was untimely. They did not inform Wender that the contract rescission had occurred until they served their pleadings in this case in April 1996. As a general rule, rescission must occur prior to, and as a condition precedent to, the bringing of an action; it is too late to claim rescission by asserting it for the first time in the pleadings. *Consulting Constr. Corp. v. Edwards*, supra at 298 (1). The record contains no basis for departing from this rule. The trial court therefore did not err in granting summary judgment to Wender on the rescission counterclaim.

6. The president and the company argue the court erred in granting summary judgment against them on their counterclaim for breach of contract because Wender failed to provide consulting services as required by the settlement agreement.[1] Our review of the counterclaim, however, shows that the president and the company never asserted a breach of contract claim on this ground. Rather, their only counterclaim for breach of contract is that Wender failed to return property to the company as required by the settlement agreement. Because they did not assert a counterclaim for breach of contract on the basis that Wender did not provide consulting services, their enumeration of error alleging such a claim for the first time is without merit. See generally *Sage Technology v. NationsBank &c.*, 235 Ga. App. 405, 406 (1) (509 SE2d 694) (1998); *Ale-8-One of America v. Graphicolor Svcs.*, 166 Ga. App. 506, 507 (3) (305 SE2d 14) (1983).

7. The president and the company contend the trial court exceeded its authority by ordering them to make all future payments due under the terms of the settlement agreement and to provide Wender with insurance coverage as required by the agreement. Although a general prayer for relief was included in Wender's amended complaint, he did not specifically pray for either of these forms of relief.

---

[1] In support of this enumeration of error the president and the company rely on the same argument addressed in Division 1 concerning the court's improper grant of summary judgment to Wender on his complaint for consulting fees.

A superior court is authorized to grant appropriate relief, including equitable relief, even though there is no express prayer, provided the propriety of the relief has been litigated and the opposing party has had an opportunity to assert defenses relevant to the relief. See *Church v. Darch*, 268 Ga. 237, 238 (486 SE2d 344) (1997); OCGA § 9-11-54 (c). The issue of enforceability of the agreement was fully litigated before the trial court, which found that the agreement was valid and enforceable.

In addition, the issue of the president's personal liability under the terms of the agreement was litigated. Considering the evidence introduced as to the financial condition of the president and the company and the other issues litigated, the trial court reasonably could have concluded that unless it granted this additional relief, a fair risk would exist that Wender's contractual rights would not be adequately protected. In the exercise of its power, the superior court could grant such additional relief as it deemed necessary in its sound discretion to protect and effectuate its judgment. Ga. Const. of 1983, Art. VI, Sec. I, Par. II. The president and the company were given a full and fair opportunity to litigate the enforceability of the entire contract and cannot now complain. *Church*, supra.

8. Wender's motion for imposition of damages or penalties for frivolous appeal is denied.

*Judgment affirmed in part and reversed in part. Andrews and Ruffin, JJ., concur.*

DECIDED MAY 18, 1999 —
RECONSIDERATION DENIED JUNE 1, 1999 — CERT. APPLIED FOR.

*Macey, Wilensky, Cohen, Whittner & Kessler, Susan L. Howick*, for appellants.
*Kitchens, Kelley & Gaynes, Joel S. Arogeti, Stephen V. Kern*, for appellee.

