**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and BRANCH, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**October 25, 2013**

# In the Court of Appeals of Georgia

A13A1273. DODDS v. DABBS, HICKMAN, HILL AND CANNON, LLP.

A13A1292. DODDS v. ZACHARIUS et al.

A13A1518. ZACHARIUS et al. v. DODDS.

PHIPPS, Chief Judge.

In August 2005, Frank Dodds served upon Savannah Air Center, LLC (a business in which he owned a 25 percent interest) and upon Jeff Zacharius, Hossein Motlagh, Iraj Shambayati, and Shahin Isad-Doost (his alleged co-members of Savannah Air; Savannah Air and Dodds's alleged co-members of Savannah Air shall hereinafter be referred to collectively as "SAC"), notice of his intent to withdraw as a member of Savannah Air. In May 2007, Dodds and Savannah Air reached a settlement concerning the value of Dodds's interest in Savannah Air, and Dodds executed a "General Release," discharging Savannah Air and those in privity with

Savannah Air from all claims, demands, rights, and causes of action, concerning matters arising from Dodds's employment, membership, and ownership in Savannah Air.

Despite the release, Dodds subsequently filed two lawsuits – one in April 2008 (which was dismissed and renewed in March 2010 ) against SAC,[1] and another one in September 2010 against an accounting firm (Dabbs, Hickman, Hill and Cannon, LLP) Savannah Air had retained after Dodds had given SAC his withdrawal notice, but before settlement was reached.[2] Dodds claimed that after the settlement he had received tax documents (drawn by the accounting firm) indicating that some settlement funds had been allocated as income disbursements for the two years following the year of Dodds's withdrawal notice, that the allocations were contrary to SAC's pre-settlement representations to Dodds that SAC no longer considered Dodds a member of Savannah Air after Dodds had served his withdrawal notice, and that the allocations exposed Dodds to significant tax consequences.

---

[1] As against SAC, Dodds asserted claims for fraud/negligent representation, breach of contract, unjust enrichment, breach of fiduciary duty, rescission of settlement agreement/release, declaratory judgment, attorney fees and litigation expenses, and punitive damages.

[2] As against the accounting firm, Dodds asserted claims for breach of a duty of due care, punitive damages, and attorney fees and litigation expenses.

2

SAC and the accounting firm moved for summary judgment, which the trial court granted. SAC also moved to dismiss the complaint, but the trial court denied that motion. In Case No. A13A1292, Dodds appeals the trial court's grant of summary judgment in favor of SAC, enumerating two errors which are reflected in Dodds's view that "[w]hile [he] has been reimbursed [by the IRS] for the taxes he never should have had to have paid to begin with, he has nonetheless sustained financial harm in this case due to the time and money he has spent litigating this matter and resolving the tax issues." In Case No. A13A1273, Dodds appeals the trial court's grant of summary judgment in favor of the accounting firm, contending that the trial court erred in determining that the terms of the release he signed discharging Savannah Air of certain rights, responsibilities and/or liability precluded his lawsuit against the accounting firm, and that the trial court erred in failing to find that the release was procured by fraud and therefore unenforceable. In Case No. A13A1518, SAC appeals the trial court's denial of its motion to dismiss the complaint.

Based on the evidence and applying standard rules of contract construction to the release in this case, we conclude that the trial court did not err in granting summary judgment to SAC and to the accounting firm. Therefore, we affirm the trial court's grant of summary judgment in favor of SAC in Case No. A13A1292, and we

affirm the trial court's grant of summary judgment in favor of the accounting firm in Case No. A13A1273. Because of our conclusion reached in Case No. A13A1292, we dismiss Case No. A13A1518, as moot.

> To prevail at summary judgment . . ., the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.[3] A defendant may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case. . . . If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue.[4]

Viewed to support Dodds,[5] the evidence showed the following. The settlement agreement, signed May 16, 2007, provided that Savannah Air would pay Dodds $4.6 million "in full and final settlement of all claims of any kind, that [Dodds] has against

---

[3] OCGA § 9-11-56 (c).

[4] *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991) (citations and emphasis omitted).

[5] *Carter v. Moody*, 236 Ga. App. 262, 263 (511 SE2d 520) (1999) ("A de novo standard of review applies to an appeal from a grant or denial of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.") (citation and punctuation omitted).

[Savannah Air], all those in privity with [Savannah Air] and [Savannah Air's] employees, principals, affiliates, shareholders, managers, members, predecessors, assigns, accountants, attorneys and anyone else who [Dodds] has or may have a claim against in [sic] way arising from or relating to [Savannah Air]." The settlement agreement also provided that Dodds would execute a release of all claims in favor of Savannah Air and those in privity with Savannah Air, as to anyone Dodds "has or may have a claim against." And Dodds executed such a release, which contained the following provision: "Dodds represents that no promise, inducement, or agreement not herein expressed has been made and that this Release contains the entire agreement between the parties."

After the parties had executed the settlement agreement and Dodds had executed the release, Dodds was sent tax documents indicating that in 2006, he had received income from Savannah Air in the amount of almost $600,000, and that in 2007, he had received income from Savannah Air in the amount of more than $600,000.

1. Dodds contends that the trial court erred in granting summary judgment in favor of SAC and in concluding that "[t]here is no evidence to support the claim of fraudulent inducement so as to set aside the Release."

Dodds claims that SAC's actions subsequent to the settlement, of providing him with tax forms designating a substantial portion of the settlement amount as income he received from Savannah Air in 2006 and 2007, reflected that SAC considered him to be a member of Savannah Air during those years, despite SAC's representations to Dodds during settlement negotiations that SAC did not consider Dodds to be a member of Savannah Air after Dodds (in August 2005) notified SAC of his intent to withdraw his membership. The inconsistency, Dodds claims, evidenced that Dodds's approval of the settlement agreement and execution of the release were procured by fraud.

"In general, a party alleging fraudulent inducement to enter a contract has two options: (1) affirm the contract and sue for damages from the fraud or breach; or (2) promptly rescind the contract and sue in tort for fraud."[6] "Critical to rescission is the

---

[6] *Ainsworth v. Perreault*, 254 Ga. App. 470, 471 (1) (563 SE2d 135) (2002) (citations omitted).

tender of benefits, the prompt restoration or offer to restore whatever the complaining party received by virtue of the contract."[7] "A party seeking to rescind a contract for fraud must restore or tender back the benefits received under the contract, or show a sufficient reason for not doing so."[8] "Rescission or attempted rescission is a condition precedent even to bringing an action seeking rescission."[9]

Here, despite Dodds's claim in his complaint for rescission of the settlement agreement and release (hereinafter, the "settlement"), there was no evidence that Dodds tendered back to Savannah Air the $4.6 million he received as part of the settlement. And we are not persuaded by Dodds's bare assertion that "[o]n the facts of this case, rescission and restoration of the benefits conferred by the settlement [was] unreasonable and impossible," on the grounds that he had already distributed

---

[7] *Meadow River Lumber Co. v. Univ. of Ga. Research Foundation*, 233 Ga. App. 169, 175 (2) (503 SE2d 655) (1998) (citation and punctuation omitted).

[8] *Wender & Roberts v. Wender*, 238 Ga. App. 355, 360 (5) (518 SE2d 154) (1999).

[9] *Cotton v. Bank South*, 231 Ga. App. 812, 815 (1) (499 SE2d 129) (1998) (citation and punctuation omitted); see *Novare Group v. Sarif*, 290 Ga. 186, 188 (1) (718 SE2d 304) (2011) (demand for rescission, served contemporaneously with the filing of lawsuit, "cannot be held to to satisfy the prerequisite" of the rule requiring one who seeks the rescission of a contract on the ground of fraud to restore, or offer to restore, the consideration received, as a condition precedent to bringing the action).

"a considerable portion of the settlement proceeds to the [IRS]." "Restoration does not require that the other party be placed in the exact situation it was in before the contract, but only that it be placed substantially in its original position. The rescinding party must derive no unconscionable advantage from the rescission."[10]

Dodds made no showing that he restored, or offered to restore to Savannah Air *any* of the $4.6 million he received pursuant to the settlement.[11] He failed to put Savannah Air in substantially the same position as before the settlement. And by retaining settlement funds (minus any amount he purportedly paid in taxes), Dodds would have derived an "unconscionable advantage" from any rescission of the release.[12]

> Where a party who is entitled to rescind a contract on ground of fraud or false representations, and who has full knowledge of the material circumstances of the case, freely and advisedly does anything which amounts to a recognition of the transaction, or acts in a manner inconsistent with a repudiation of the contract, such conduct amounts to

---

[10] *Wender & Roberts*, supra (citations omitted).

[11] Compare *Crews v. Cisco Bros. Ford-Mercury*, 201 Ga. App. 589, 591 (1) (411 SE2d 518) (1991) (return of property not necessary for rescission where defrauding party made it impossible or unreasonable).

[12] See generally *Wender & Roberts*, supra.

8

acquiescence, and, though originally impeachable, the contract becomes unimpeachable in equity.[13]

After receiving the tax document for the 2006 tax year, Dodds admittedly chose to file with the IRS an amended return for tax year 2006, thereby acknowledging that he received the reported income for that year; he then chose to later apply with the IRS for a reimbursement of taxes that he had paid on the allegedly "wrongfully allocated" funds, which reimbursement he admits he received.

Instead of returning to Savannah Air the settlement funds which he received, Dodds showed an intent to treat the funds as his, thereby opting to affirm the settlement and sue for damages from the alleged fraud or breach.[14] Dodds was thus

---

[13] *Meadow River Lumber Co.*, supra 176 (2) (punctuation and footnote omitted); OCGA § 13-4-60 ("A contract may be rescinded at the instance of the party defrauded; but, in order to rescind, the defrauded party must promptly, upon discovery of the fraud, restore or offer to restore to the other party whatever he has received by virtue of the contract if it is of any value.").

[14] See *Novare Group*, supra; *Lakeside Investments Group v. Allen*, 253 Ga. App. 448, 452 (2) (a) (559 SE2d 491) (2002) (buyer claiming it was fraudulently induced to enter a contract undisputably affirmed contract when, after learning of the fraud, it had the property rezoned and built an office building thereon with plans to build more; even though the buyer may have early on unsuccessfully attempted to rescind the contract, improving the property thereafter showed an intent to treat the property as the buyer's own and thereby affirmed the contract); *Wender & Roberts*, supra at 360-361 (5); *Meadow River Lumber Co.*, supra at 175-176 (2).

bound by the terms of the release, which included an "entire agreement" clause.[15]

"Therefore, [Dodds] [was] estopped from arguing that [he] relied on representations other than those contained in the contract. Stated another way, the entire agreement clause operates as a disclaimer, establishing that the written agreement completely and comprehensively represents all the parties' agreement."[16]

Dodds points out that SAC wrote him a letter stating that it (SAC) did not consider Dodds a member of Savannah Air, as of the time Dodds served upon SAC his withdrawal notice. But there was no evidence that the letter was incorporated into the release, and thus, the parties were not bound by any representations made in the

---

[15] See *Meadow River Lumber Co.*, supra at 173 (1) ("Where the allegedly defrauded party elected to affirm the contract, that party is bound by the contract's terms and is subject to any defenses which may be based on the contract.") (punctuation and footnote omitted).

[16] *Ainsworth*, supra at 472 (1) (citations and punctuation omitted); *Novare Group*, supra at 190 (3) ("Where a purchaser affirms a contract that contains a merger or disclaimer provision, he is estopped from asserting reliance on a representation that is not part of the contract."; since purchasers did not properly elect rescission as a remedy and were not entitled to rescission as a remedy, they were bound by the terms of their agreements, and therefore, purchasers could not maintain their claims for fraud in the inducement based on active concealment, negligent misrepresentation, or the Fair Business Practices Act) (citation omitted); see *Driscoll v. Schuttler*, 697 FSupp. 1195, 1202 (N. D. Ga. 1988).

10

letter.[17] And "reliance on . . . alleged [oral] misrepresentations is barred by the merger clause as well."[18] Therefore, Dodds's assertion, even if true, that "the record is clear that [SAC's] position with respect to Dodds's membership status was not based solely on the statement in the letter issued by SAC's counsel, but rather was reiterated by consistent, repeated statements to the effect that Dodds's interest had terminated as of the date of his Letter of Intent," is of no avail.

Accordingly, SAC was entitled to judgment as a matter of law, and the trial court did not err in granting summary judgment in favor of SAC as to Dodds's claim that he was fraudulently induced to execute the release.

2. Dodds contends that the trial court erred in granting summary judgment to SAC as to the remaining claims he asserted in his complaint.[19] The trial court ruled that those claims were barred pursuant to the terms of the release. We agree with the trial court.

---

[17] See *Ainsworth*, supra.

[18] *Ainsworth*, supra at 474 (1) (citation omitted).

[19] The remaining claims were for negligent misrepresentation, breach of contract, unjust enrichment, breach of fiduciary duty, declaratory judgment, attorney fees and litigation expenses, and punitive damages.

In Division 1,[20] we determined that Dodds was bound by the terms of the release. "A release or settlement agreement is a contract subject to construction by the court. It is governed by state law applicable to contracts in general."[21] "The construction of a contract is a question of law for the court."[22] "However, where the language of a contract is clear, unambiguous, and capable of only one reasonable interpretation, no construction is necessary or even permissible by the trial court."[23] Dodds concedes that the release was executed "[i]n connection with the settlement [agreement]."

The "General Release" which Dodds executed pursuant to the settlement agreement provided, in pertinent part, as follows.

[Dodds] . . . does hereby . . . acquit, remise, release, and forever discharge SAVANNAH AIR CENTER, LLC, a Georgia limited liability company, Jeffrey D. Zacharius, Gholamhossein Motlagh, fraj Shambayati and Shahin Isadoost, as well (sic) any other Members or Managers, past, present or future, as well as their attorneys, agents,

---

[20] Supra.

[21] *UniFund Financial Corp. v. Donaghue*, 288 Ga. App. 81, 82 (653 SE2d 513) (2007) (punctuation and footnote omitted).

[22] OCGA § 13-2-1.

[23] *Ainsworth*, supra at 476 (4) (citation and punctuation omitted).

employees, executors, administrators, predecessors, successors and assigns (collectively "SAC"), from any and all claims, demands, rights, and causes of action of every kind and nature, known and unknown, all damages, lost earnings, breach of fiduciary duty, taxes, distributions, opportunity costs, attorney fees and any other expenses that belong to Dodds or which may hereafter accrue to Dodds resulting from his employment, Membership and Ownership Interest in Savannah Air Center, LLC, . . . .

The settlement agreement and release were clear and certain in their terms that Dodds could not sue SAC for any claim that existed at the time the settlement agreement and release were executed or for any claim which may have thereafter accrued, and related to or resulted from Dodds's employment, membership, and ownership interest in Savannah Air.[24]

It is axiomatic that contracts must be construed in their entirety and in a manner that permits all of the terms contained therein to be consistent with one another. Of course, the terms and phrases contained in a contract must be given their ordinary meaning. As always, the

---

[24] *Thompson v. Allstate Ins. Co.*, 285 Ga. 24, 29 (3) (673 SE2d 227) (2009) (except for determining which persons are covered or bound by the release, parol evidence is always admissible as to what and whose claims were released).

13

paramount rule in construing a contract is to ascertain the intention of the parties.[25]

Indeed, "[the] release extinguishe[d] [against SAC] the entire cause of action."[26] Accordingly, the trial court did not err in granting summary judgment to SAC as to Dodds's remaining claims.[27]

*Case No. A13A1273*

3. Dodds contends that the trial court erred in granting summary judgment to the accounting firm on the ground that Dodds's claims were precluded pursuant to the terms of the settlement reached between Dodds and Savannah Air. Specifically, Dodds asserts that the language in the release, discharging from "any and all claims . . ." Savannah Air and its "agents," fails to "meet the *Lackey [v. McDowell]*[28] standard so as to release the claims against [the accounting firm]." "In reviewing a

---

[25] *Schwartz v. Schwartz*, 275 Ga. 107, 108 (1) (561 SE2d 96) (2002) (footnotes omitted).

[26] *Miller v. Grand Union Co.*, 270 Ga. 537, 538 (1) (512 SE2d 887) (1999).

[27] See generally *Ainsworth*, supra at 476-477 (4).

[28] 262 Ga. 185 (415 SE2d 902) (1992).

14

question of law, as here, we owe no deference to a trial court's ruling on a legal question."[29]

In *Posey v. Medical Center-West*,[30] the Supreme Court of Georgia said: "the intent of the parties to [a] release regarding its effect may be proven by external evidence as against a third party. One not a party to the release may not object to the external evidence under the parol evidence rule."[31] In *Lackey*,[32] the Court took the "opportunity to modify *Posey*, so as to provide a clearer rule: Only those parties *named* in the release will be discharged by that instrument."[33] And by "named," the Court meant "being identified either by proper name or such other description as leaves no question of the identity of the party released."[34] The Court reasoned that this clearer rule "should eliminate the need to inquire as to the intent of the parties to

---

[29] *Carey v. Houston Oral Surgeons*, 265 Ga. App. 812, 815 (1) (595 SE2d 633) (2004) (footnote omitted).

[30] 257 Ga. 55 (354 SE2d 417) (1987).

[31] Id. at 59 (citations omitted).

[32] Supra.

[33] *Lackey*, supra at 186 (footnote omitted).

[34] Id. at 186, n. 3.

15

releases executed after the date of this opinion."[35] Thus, parol evidence is inadmissible for determining which persons are covered or bound by a release.[36]

Although the settlement agreement provided that Dodds agreed that "[u]pon payment of said $4.6 million, [he would] execute a release of all claims in favor of [Savannah Air], those in privity with [Savannah Air] and [Savannah Air's] employees, principals, affiliates, shareholders, *accountants*, members, managers, predecessors, assigns, attorneys and anyone else who [Dodds] has or may have a claim against,"[37] the release Dodds executed did not employ the terminology "accountants" in enumerating those discharged thereby. But the trial court held that Savannah Air's accounting firm was an "agent," because the accounting firm rendered professional services to Savannah Air, and thus, was covered by the release. There is authority to support the trial court's ruling.

---

[35] Id.

[36] *Thompson v. Allstate Ins. Co.*, 285 Ga. 24, 29 (3) (673 SE2d 227) (2009); *Miller*, supra ("*Posey* requires that the master be named in a release if he is to be discharged thereby.") (citations omitted).

[37] (Emphasis supplied.)

In *Harkins v. CA 14th Investors*,[38] a worker injured in a parking deck at work reached a settlement with his employer, and as part of that settlement, the worker executed a release which "contained language by which [the worker] agreed to fully waive, discharge, and release any and all claims of whatever nature, known or unknown, I may have against [the employer], its parent, subsidiaries, affiliated and related companies, [and] their respective owners, . . . as a result of actions or omissions occurring through this date."[39] This court affirmed the trial court's grant of summary judgment to a business entity that partly owned the parking deck, as did the employer, holding that the business entity fit within the category of "affiliated and related companies," as identified in the release.[40]

In reaching this result, the court found "no ambiguity in the terms 'affiliated' and 'related' companies."[41] The court recognized that "[t]he fact that the scope of the release is broad does not make it ambiguous,"[42] that "[t]he words in a contract

---

[38] 247 Ga. App. 549 (544 SE2d 744) (2001).

[39] Id. at 549-550.

[40] Id. at 551.

[41] Id. at 550.

[42] Id. at 550 (citation and punctuation omitted).

17

generally bear their 'usual and common signification,'"[43] and that "dictionaries may supply the plain and ordinary meaning of a word."[44] Looking then to Black's Law Dictionary, the court defined the terms "affiliate," "affiliate company," and "related."[45]

We apply those principles here. According to Black's Law Dictionary, the term "agent" means "One who is authorized to act for or in place of another; a representative."[46] Savannah Air had retained the services of the accounting firm before Dodds and Savannah Air had reached a settlement. Therefore, the trial court was authorized to conclude that the accounting firm was authorized to act for or in place of Savannah Air concerning financial matters, that the accounting firm fit within the category of "agents," and that the accounting firm was thereby released from liability for claims then existing and for claims which may have accrued after

---

[43] Id. at 550, citing OCGA § 13-2-2 (2) (punctuation omitted).

[44] Id. at 550 (citation omitted).

[45] Id. at 550-551.

[46] Black's Law Dictionary (9th ed. 2009).

18

Savannah Air's buy-out of Dodds's interest in Savannah Air and that resulted from Dodds's employment, membership, and ownership interest in Savannah Air.[47]

Accordingly, the trial court did not err in granting the accounting firm's motion for summary judgment.[48]

4. Dodds contends that the trial court erred in granting summary judgment to the accounting firm because the accounting firm, in defense of the lawsuit against it, was allowed to "invoke[]" a fraudulently executed release.

As we have determined in Division 1,[49] there was no competent evidence that Dodds was fraudulently induced to execute the release, and therefore, Dodds's contention fails.[50]

---

[47] See *Harkins*, supra at 551; *Driscoll*, supra at 1200, 1203-1204 (accountant defendant not identified in release by proper name, was held to have been covered under the release terms of "advisors or agents" involved in deal to cancel a management agreement and certain indebtedness).

[48] *Harkins*, supra; *Driscoll*, supra.

[49] Supra.

[50] *Meadow River Lumber Co.*, supra ("Where the allegedly defrauded party elected to affirm the contract, that party is bound by the contract's terms and is subject to any defenses which may be based on the contract.") (punctuation and footnotes omitted).

19

5. SAC contends that the trial court erred in denying its motion to dismiss the case. Because we affirm the trial court's grant of summary judgment to SAC in Case No. A13A1292, this issue is moot. Therefore, we dismiss the appeal in Case No. A13A1518.

*Judgments affirmed in Case Nos. A13A1273 and A13A1292. Appeal dismissed in Case No. A13A1518. Ellington, P. J., and Branch, J., concur.*