**FOURTH DIVISION**
**BARNES, P. J.,**
**RAY and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 28, 2016**

# In the Court of Appeals of Georgia

A15A2068. AVERY v. GRUBB et al.

BARNES, Presiding Judge.

This appeal was brought from the trial court's dismissal of the complaint filed by appellant Victoria Ann Avery, individually and as remainder beneficiary of VM Trust #1 and third-party beneficiary of G&M International, LLC (hereinafter "Avery"), against John G. Grubb, Jr, Dale Schwartz, and Snap Line Services (collectively "appellees"). Upon our review, we affirm.

> OCGA § 9-11-12 (b) (6) provides that an action can be dismissed upon the merits where the complaint fails to state a claim upon which relief can be granted. Dismissal is appropriate only where a complaint shows with certainty that the plaintiff would not be entitled to relief under any state of facts that could be proven in support of his claim. We review the dismissal de novo, construing the complaint's allegations and all possible inferences therefrom in favor of the plaintiff.

(Citation and punctuation omitted.) *Northeast Ga. Cancer Care v. Blue Cross & Blue Shield of Ga.*, 297 Ga. App. 28, 29 (676 SE2d 428) (2009).

Generally affirmative defenses are sustained by contents of the answer and thereby convert a motion to dismiss into a judgment under the pleadings pursuant to OCGA § 9-11-12 (c). *Murrey v. Speciality Underwriters*, 233 Ga. 804, 807-808 (213 SE2d 668) (1975). However, under the Federal Rules of Civil Procedure, "[r]elease is an affirmative defense . . . and such a defense will support a motion to dismiss . . . where it is (1) definitively ascertainable from the complaint and other sources of information that are reviewable at this stage, and (2) the facts establish the affirmative defense with certitude[.]" *Citibank Global Markets, Inc. v. Santana*, 573 F3d 17, 23 (1st Cir. 2009). "Because Georgia's Civil Practice Act is modeled on the Federal Rules of Civil Procedure, decisions of the federal courts interpreting the federal rules are persuasive authority." *Wellstar Health Systems v. Kemp*, 324 Ga. App. 629, 638 (2), n. 19 (751 SE2d 445) (2013).

So construed, the record reveals that Grubb served for 20 years as the trustee of VM Trust #1 (the "Trust'), and that Avery's ex-husband, G. V. Matthews, is the lifetime beneficiary of the Trust. Avery was named as the sole grantor of the Trust, with the authority to remove the trustees at any time for any reason. In May of 2013, after Avery and Mathews divorced, Avery, as grantor of the Trust, and suspecting Grubb of undertaking a fraudulent scheme to defund the Trust, removed him as the trustee for

2

alleged breach of his fiduciary duties. Per the provisions in the Trust, Schwartz was appointed as the successor trustee. The Trust provided that if neither Grubb nor Schwartz could serve, then a trust appointment committee consisting of Grubb, Schwartz, and Riley R. Taylor would name a successor. It further provided that if any member of the appointment committee could not perform that task, then Avery, as the grantor, would take the committee member's place.

In June of 2013, Avery filed a complaint in the Superior Court of Fannin County for a temporary restraining order and injunctive relief against Grubb, seeking to remove him from the Trust's appointment committee, so that she could serve in that capacity. Among other things, Avery maintained that Grubb had breached his fiduciary duties by, among other things, awarding himself a 10 percent ownership interest in companies owned and funded by the Trust, personally profiting from the sales of various Trust properties, and improperly serving as counsel to the Trust's business ventures without informing Avery. One of the aforementioned companies was G&M International, which was managed by Matthews and owned 90 percent by the Trust and 10 percent by Grubb, and whose net proceeds on average of $150,000, were "the sole income producing asset of the Trust."

Avery maintained that Grubb's presence on the appointment committee prevented her from selecting a trustee who would "administer the affairs of the Trust properly" because of his relationship with Schwartz. Avery complained that Schwartz "will not vote for or even consider any nominee submitted by [Avery, ] . . . [and] he intends to liquidate the Trust's assets and pay all of the proceeds over to the lifetime beneficiary, . . . Matthews."

On July 26, 2013, Snap Line Services, Inc. was incorporated as a Georgia Corporation with Grubb listed as the listed registered agent and incorporator. On August 15, 2013, G&M sold its "furniture, fixtures, and equipment (including computer and telecommunications equipment)" to Snap Line for $9,500. The Bill of Sale was signed by Matthews, as manager of G&M International.

On October 24, 2013, Avery and Grubb entered into an agreement

*in settlement and compromise of any claims or disputes* AVERY and her respective heirs, agents, estates, servants, successors, administrators and assigns (collectively "RELEASORS"), may have against GRUBB, John G. Grubb, Jr. P.C., and Continental Casualty Company ("CNA"), any related CNA entity, as well as, each of their respective estates, heirs, executors, successors in interest, assigns, predecessors, parent companies, suborders, subsidiaries, entities, business units, affiliates, directors, members, managers, officers, partners, representatives, shareholders, attorneys, independent contractors, subcontractors, employees, insurers,

underwriters, agents, subrogates, assigns, companies, leasers, lessees, franchisees, and servants whether stated herein or not (collectively "RELEASED PARTIES"). (Emphasis supplied.)

The agreement provided that, in consideration for the payment of $10,000.00 to Avery, she would dismiss the suit against Grubb, and would

expressly RELEASE, ACQUIT, and DISCHARGE RELEASED PARTIES, and all of their present and former partners, employees, agents, attorneys, insurers, heirs, successors, and assigns, and each of them, from any and all actions, causes of action, damages, demands, and claims of whatsoever kind or nature, whether known or unknown, whether in law or in equity, whether direct or indirect, arising from any acts, omissions, occurrences, or facts that relate to or are in any way connected with the [Fannin County] Lawsuit or the allegations contained therein.

The agreement further provided that in consideration for the release and dismissal of the suit, Grubb would resign from the appointment committee of the Trust. The "Entire Agreement" clause stipulated that "[t]his Agreement constitutes the entire Agreement of the Parties, and supersedes all prior and contemporaneous negotiations and agreements, oral or written . . . [and] [n]o representations, oral or written, are being relied upon by the parties in executing this Agreement other than the express representations of this Agreement."

5

Avery dismissed as trustee on October 23, 2013, and on October 31, 2013, the appointment committee consisting of Avery, Schwartz, and a third member confirmed a new trustee, William Hadsell. In early November of 2013, Hadsell visited the offices of G&M International and met with Matthews, who purportedly told him that the company no longer existed and "that all of the business is now conducted by a company known as Snap Line Services." Hadsell resigned as trustee since "the Trust no longer own[ed] an income producing asset other than . . . real estate." On November 14, 2013, the appointment committee appointed Avery as trustee.

Approximately one year later, on October 15, 2014, Avery filed a complaint for rescission of the sales contract between Snap Line and G&M International, for damages for imposition of constructive trust, and for injunctive relief in Forsyth County against Grubb, Schwartz, and Snap Line. In the complaint, she alleged that Grubb and Schwartz had breached various fiduciary duties while trustees, including colluding with Matthews to defraud the trust by selling G&M's tangible assets to Snap Line for $9,500. In addition to rescission of the sale between Snap Line and G&M International, Avery sought, among other things, the removal of Schwartz from the Trust's appointment committee, and various damages. Avery later amended the complaint to add herself as a plaintiff in her capacity as trustee of the Trust, Matthews as a defendant, and to allege

6

Georgia Rico violations, civil conspiracy, and tortious interference with business relation claims.

The appellees answered, denying liability, and Grubb and Schwartz asserted affirmative defenses of waiver and release based on the settlement agreement. On November 20, 2014, the appellees filed a motion to dismiss Avery's complaints, contending, among other things, that Avery's claims against Grubb and Schwartz failed as a matter of law because they had been waived and released by the settlement agreement, and that she had failed to state a viable claim against Snap Line. Thereafter, Avery filed a motion to have the settlement agreement declared void ab initio.

The trial court granted appellants' motion to dismiss, finding that Avery lacked "standing to prosecute her claims against [Grubb]" because of the settlement agreement, and denied Avery's motion to have the settlement declared void ab initio. This appeal ensued.

1. Avery first contends that the trial court erred in not ruling on the merits of her motion to have the settlement and release agreement declared void ab initio before ruling on the appellees' motion to dismiss. She asserts that at the time of the negotiation of the agreement, she was unaware of Grubb's participation in the liquidation of G M

International from the Trust's assets, and that she would not have entered into the agreement to release Grubb from all liability had the liquidation been disclosed to her.

Grubb filed a motion to dismiss and several affirmative defenses based on the settlement agreement, including that Avery had released or waived any claims per the settlement agreement. He also maintained that Avery lacked standing either personally or as a trustee because of her release in the settlement agreement of any interest in G&M International, and because she had resigned her position as trustee of the Trust and had not been legally reinstated.

In response, Avery filed a motion to have the settlement and release agreement declared void ab initio, in which she claimed that Schwartz was not subject to the agreement's release, and that Grubb's release was obtained through acts of affirmative fraud, in that he had breached his fiduciary duties by, among other things, forming Snap Line as a conduit for the liquidated assets of G&M International.

At the hearing on Grubb's motion to dismiss, with regard to the settlement agreement, the trial court held that, based on Avery's allegations in the Fannin County complaint, "[Avery] should not have relied on anything that Grubb said. She should have known that, according to her, he was a bad guy. And for her to take the $10,000,

8

and to release him and his successors, there was no justifiable reliance of any kind of representation that could form a cause for fraud here."

We find no error in the trial court's denial of Avery's motion to have the settlement and release agreement declared void ab initio. Likewise, we are not persuaded that its concurrent grant of Grubb's motion to dismiss was procedurally barred, as maintained by Avery.

> In general, a party alleging fraudulent inducement to enter a contract has two options: (1) affirm the contract and sue for damages from the fraud or breach; or (2) promptly rescind the contract and sue in tort for fraud. Critical to rescission is the tender of benefits, the prompt restoration or offer to restore whatever the complaining party received by virtue of the contract. A party seeking to rescind a contract for fraud must restore or tender back the benefits received under the contract, or show a sufficient reason for not doing so. Rescission or attempted rescission is a condition precedent even to bringing an action seeking rescission.

(Punctuation and footnotes omitted.) *Dodds v. Dabs, Hickman, Hill and Cannon, LLP*, 324 Ga. App. 337, 340-341 (1) (750 SE2d 410) (2013); see OCGA § 13-4-60 ("A contract may be rescinded at the instance of the party defrauded; but, in order to rescind, the defrauded party must promptly, upon discovery of the fraud, restore or offer to restore to the other party whatever he has received by virtue of the contract if it is of any value."). "[E]quity will not decree the cancellation of an instrument where anything

9

of value has been received until repayment is either made or tendered[.]" *Taylor, Bean & Whitaker Mrtg. Corp. v. Brown*, 276 Ga. 848, 850 (2) (583 SE2d 844) (2003).

Here, although Avery contends that she did not find out about the Snap Line and G&M International transaction until after she signed the settlement and release agreement, she waited a year after the settlement agreement to file the present action for, among other things, Grubb's alleged breach of fiduciary duty, fraud, and rescission of the Snap Line / G&M International bill of sale. Even though Avery may not have known about the Snap Line/G&M International transaction when she signed the agreement, she was informed about the sale less than one month later, in November of 2013. The defrauded party must act "promptly." OCGA § 13-4-60. Despite this knowledge, Avery did not offer or tender to Grubb the $10,000 received per the settlement agreement. She did not request rescission in her complaint, nor did she allege rescission was impossible.

> Where a party who is entitled to rescind a contract on ground of fraud or false representations, and who has full knowledge of the material circumstances of the case, freely and advisedly does anything which amounts to a recognition of the transaction, or acts in a manner inconsistent with a repudiation of the contract, such conduct amounts to acquiescence, and, though originally impeachable, the contract becomes unimpeachable in equity. If a party to a contract seeks to avoid it on the ground of fraud or mistake, he must, upon discovery of the facts, at once

10

announce his purpose and adhere to it. Otherwise he can not avoid or rescind such contract.

(Citation omitted.) *Owens v. Union City Chrysler-Plymouth*, 210 Ga. App. 378, 380 (436 SE2d 94) (1993).

While Avery argues that Grubb fraudulently induced her to enter into the settlement agreement, "[w]here the allegedly defrauded party elected to affirm the contract, that party is bound by the contract's terms and is subject to any defenses which may be based on the contract." (Punctuation and footnote omitted). *Meadow River Lumber Co. v. Univ. of Ga. Research Foundation*, 233 Ga. App. 169, 173 (1) (503 SE2d 655) (1998). Thus, although Avery alleges fraudulent inducement to enter into the agreement, given her affirmance and the agreement's express merger clause, there is no reliance absent a showing that Avery lacked knowledge of the contents of the agreement and, since the alleged representations were not stated in the agreement itself, the merger clause precludes a claim of fraud. See *Spires v. Relco Inc.*, 165 Ga. App. 4, 6 (2) (299 SE2d 58) (1983).

"Therefore, [Avery] cannot maintain [her] claim[] for fraud in the inducement based on active concealment [or] negligent misrepresentation.*" Novare Group, Inc. v. Sarif*, 290 Ga. 186, 190 (3) (718 SE2d 304) (2011).

11

2. Avery contends that the trial court erred in finding that Schwartz and Snap Line were released parties within the terms of the settlement agreement. We do not agree.

> A release or settlement agreement is a contract subject to construction by the court. It is governed by state law applicable to contracts in general. The cardinal rule of construction is to determine the intention of the parties. Where the terms of a written contract are clear and unambiguous, the court will look to the contract alone to find the intention of the parties. Such a contract is the only evidence of what the parties intended and understood by it.

(Punctuation and footnotes omitted). *UniFund Financial Corp. v. Donaghue*, 288 Ga. App. 81, 82 (653 SE2d 513) (2007). "[A] valid release may encompass an injury that is unknown at the time of its execution, if the possibility of such injury is known." (Emphasis omitted.) *Loyal v. Norfolk Southern Corp.*, 234 Ga. App. 698, 701 (507 SE2d 499) (1998).

The "General Release" which Avery executed pursuant to the settlement agreement provided, in pertinent part, that Avery would:

> RELEASE, ACQUIT, and DISCHARGE RELEASED PARTIES, and all of their present and former partners, employees, agents, attorneys, insurers, heirs, successors, and assigns, and each of them, from any and all actions, causes of action, damages, demands, and claims of whatsoever

12

kind or nature, whether known or unknown, whether in law or in equity, whether direct or indirect, arising from any acts, omissions, occurrences, or facts that relate to or are in any way connected with the [Fannin County] Lawsuit or the allegations contained therein.

In dismissing Avery's claim, the trial court held that:

Having carefully considered the Complaint, Amended Complaint, Motion to Dismiss, and briefing materials, the Court has determined that. . . Avery lacks standing to prosecute her claims against the Defendants. Paramount to this determination is the parties' Settlement and Release Agreement. . . . . The Settlement and Release Agreement released Grubbs and his successors and assigns, among others "from any and all actions, causes of action, damages, demands, and claims of whatsoever kind or nature, whether known or unknown, whether in law or equity, whether direct or indirect, arising from any acts, omissions, occurrences, or facts that relate to or are in any way connected with the Lawsuit or the allegations contained therein." . . . Contrary to [Avery's] assertions. . . Schwartz, as a successor trustee, is included in the release. . . . The Court accordingly finds that the Settlement and Release Agreement bars [Avery's] causes of action as against Grubb and Schwartz. Moreover, because Grubb and Schwartz are alleged to have established Snap Line Services, Inc. in furtherance of their alleged fraudulent scheme, and Snap Line Services, Inc. could only act through Grubb and Schwartz, then the Settlement and Release Agreement further bars [Avery's] causes of action as to Snap Line Services, Inc., as well.

13

The settlement agreement and release was clear and certain in its terms that Avery agreed that the released parties to the settlement and compromise of any claims or disputes included,"whether stated herein or not," Grubb's "companies," "entities," "business units," and "affiliates." Avery alleged in her complaint that Snap Line was formed by Grubb as part of a fraudulent scheme to defund the Trust. "As an artificial person, a corporation can act, and does act, alone through agents. It deals with other corporations and with natural persons by its agents; it can deal with the world in no other way." (Citation and punctuation omitted.) *Eckles v. Atlanta Technology Group*, 267 Ga. 801, 803 (2) (485 SE2d 22) (1997). Clearly, in accordance with the principles of contract construction discussed above, Snap Line, which Avery maintained was formed by Grubb to facilitate a fraud, was a "released" party as contemplated by the agreement.

Likewise, that trial court did not err in finding that as the successor trustee, Schwartz was also subject to release per the settlement agreement. The agreement specifically released Grubb's "successors," and as found by the trial court and undisputed by the parties, Schwartz was the successor trustee after Grubb was released. Although Avery contends that the agreement should be construed in the vein of a trust instrument and thus cannot relieve Schwartz of liability for a breach of a fiduciary duty,

14

we have held that a release agreement entered into after the creation of the trust "does not meet the statutory definition of a trust instrument." *Heiman v. Mayfield*, 300 Ga. App. 879, 882 (1) (686 SE2d 284) (2009) (decided under former OCGA § 53-12-2).

Thus, it appears from the allegations of the complaint that Avery would not be entitled to relief on her claims under the facts as alleged. Accordingly, the trial court did not err in granting appellees' motion to dismiss her claim pursuant to OCGA § 9-11-12 (b) (6).

*Judgment affirmed. McMillian, J., concurs. Ray, J., concurs in Division 1 and in judgment only as to Division 2.*