**THIRD DIVISION**
**DOYLE, P. J.,**
**MARKLE and PADGETT, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 24, 2025**

# In the Court of Appeals of Georgia

A25A0221. DARDEN et al. v. PT HILLS CONDO, LP et al.

PADGETT, Judge.

John Darden and others ("Buyers") appeal from the trial court's dismissal of their claims for fraud and non-disclosure against PT Hills Condo, LP and PT Hills Place Club, LLC (together, "Defendants"), arising out of their purchase of condominium units in a senior retirement community. For the reasons set forth below, we affirm in part, vacate in part, and remand with direction.[1]

On appeal, we apply a de novo standard of review to a trial court's grant of a motion to dismiss. *Weathers v. Dieniahmar Music, LLC*, 337 Ga. App. 816, 817 (788 SE2d 852) (2016). We "construe the pleadings in the light most favorable to the

---

[1] Oral argument was held in this case on February 26, 2025. A link to the video can be found on this Court's website.

appellant with all doubts resolved in the appellant's favor." Id. (citation and punctuation omitted). A motion to dismiss may be granted "only where a complaint shows with certainty that the plaintiff would not be entitled to relief under any state of facts that could be proven in support of his claim." *Goldston v. Bank of America*, 259 Ga. App. 690, 690-691 (577 SE2d 864) (2003) (citation and punctuation omitted).

So viewed, the record shows that Buyers, most of whom are over 75 years old, separately bought condominiums at Peachtree Hills Place, a senior retirement community owned and operated by Defendants. Buyers signed separate purchase agreements between 2016 and 2022 and closed between 2019 and 2022. A mandatory one-time entrance fee of $100,000 provided them access to recreational facilities (the "Club") as well as to a separate medical facility ("The Terraces") offering assisted living, memory care, and skilled nursing on a fee-for-service basis. Buyers agreed to pay monthly Club fees that were "subject to increase if 'necessary' in order 'to meet the financial needs of operating the Community.'" As part of the sales process, Buyers signed acknowledgments of receipt of a disclosure package which they allege was incomplete. In November 2023, Buyers sued Defendants asserting claims including that Defendants were fraudulently concealing conflicts of interest and self-

dealing during the purchase process in violation of the Georgia Condominium Act (the "Condominium Act"), OCGA § 44-3-111 (Count I) and failed to provide disclosures required by continuing care providers and facilities under OCGA § 33-45-10 (Count II). Buyers also sought a declaration that provisions of undisclosed lease agreements pertaining to the Club and Terraces were illegal and unenforceable because they required Buyers to pay higher monthly fees without their consent (Count IV(A)). In addition, Buyers claimed PT Hills Condo's permanent control of the condominium association (to the exclusion of the residents) is unlawful and unconscionable, entitling Buyers to declaratory relief, reformation, and/or rescission (Counts IV(B) and V).[2] Defendants moved to dismiss these counts for failure to state a claim upon which relief could be granted under OCGA § 9-11-12 (b) (6), arguing that (1) the Condominium Act claim was barred by the applicable one-year statute of limitation, (2) Defendants provided any disclosures under OCGA § 33-45-10, (3) Buyers could not rescind their purchase agreements because there was no offer to tender, and (4) Buyers did not have standing to assert the declaratory judgment and reformation

---

[2] The original complaint asserted five Counts. It was later amended to add a Count VI for breach of tolling agreements. Defendants sought to dismiss only Counts I, II, IV, V, and VI; Count III remains pending. Buyers do not challenge the dismissal of Count VI with this appeal.

claims. One of the Buyers, Candace A. McNair, moved for partial summary judgment as to Counts I, II, and IV(A). The trial court granted Defendants' motion to dismiss , and Buyers filed a motion for reconsideration. In a separate order, the trial court denied McNair's motion for partial summary judgment as moot. Following a hearing, the trial court denied Buyers' motion for reconsideration but issued certificates of immediate review of that order and the order denying summary judgment. This Court granted Buyers' applications for interlocutory appeal , and this appeal followed.

1. In their first enumeration of error, Buyers contend that the trial court erred by granting Defendants' partial motion to dismiss on Counts I, II, IV, and V and in denying their motion for reconsideration.

*(a) Count I - Georgia Condominium Act Claim*

Buyers contend that the trial court erred in dismissing the Condominium Act Claim because (i) the applicable limitations period was controlled by OCGA § 44-3-111 (i) (4) and (ii) Defendants' fraud tolled the statute of limitation. We disagree.

Under the Condominium Act, any action against the seller for missing or misleading information under OCGA § 44-3-111 must be made

at any time prior to the expiration of one year after the date upon which the last of the events described in paragraphs (1) through (5) of this subsection shall occur:

(1) The closing of the transaction;

. . .

(4) As to claims relating to the common elements and other portions of the condominium which are the responsibility of the association to maintain, the date upon which the declarant's right to control the association terminates as provided in Code Section 44-3-101 . . .

OCGA § 44-3-111 (i).

(i) Here, Buyers do not dispute that they filed the lawsuit more than a year after closing. They argue, however, that the Club and Terraces qualify as "other portions of the condominium which are the responsibility of the association to maintain"[3] and

---

[3] Buyers do not seem to contend that the Club and Terraces be considered as common elements, but the same logic applies. "Common elements" of a condominium are defined by the Condominium Act as "portions of the condominium other than the units." OCGA § 44-3-71 (4).

therefore, the statute of limitation does not begin to run until PT Hills Condo's rights under OCGA § 44-3-101 have terminated.[4] OCGA § 44-3-111 (i) (4). We disagree.

"Condominium" is defined as "the property lawfully submitted to this article by the recordation of condominium instruments pursuant to this article." OCGA § 44-3-71 (7). And, "[n]o property shall be deemed to be a condominium within the meaning of this article unless undivided interests in common elements are vested in the unit owners." Under the plain meaning standard[5], if ownership is required for property to be deemed a condominium, ownership would also be required for property that is a "portion" of the condominium. Consequently, "association" in OCGA § 44-

---

[4] According to Buyers, these rights will never terminate because PT Hills Condo, LP "is both the Declarant and the Owner of the Club and Terraces and therefore controls the Master Association into perpetuity."

[5] "Under our well-established rules of statutory construction, we presume that the General Assembly meant what it said and said what it meant." *Patton v. Vanterpool*, 302 Ga. 253, 254 (806 SE2d 493) (2017) (citation and punctuation omitted). Therefore, "[w]hen presented with a question of statutory interpretation, we begin by examining the statute's plain language, reading the text in its most natural and reasonable way, as an ordinary speaker of the English language would . . . [W]e must afford the statutory text its plain and ordinary meaning, viewed in the context in which it appears. If the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning is at an end." *Sosebee v. State*, 317 Ga. 424, 427 (1) n.2 (893 SE2d 653) (2023) (citations and punctuations omitted).

3-111 (i) (4) means the residential condominium association here.[6] Buyers do not dispute that the Club and Terraces are owned by PT Hills Condo alone (and managed by Isakson Living, Inc.), while Buyers have membership interests in the Club and Terraces. And while Buyers' complaint claims that the overall voting structure of the "Master Association", specifically, the "critical veto power of the Master Association over the Residential Association" deprives them of "control over any aspect of the condominium community," they also plead that the residential association is solely controlled by the unit owners. Because OCGA § 44-3-101 and OCGA § 44-3-111 (i) (4) only pertain to rights and responsibilities in connection with ownership interests, not membership interests, Buyers cannot rely on them for any claims made pertinent to the Club and Terraces.

(ii) We also disagree with Buyers' argument that the limitations period under OCGA § 44-3-111 (i) (1) has been tolled by fraud. Under OCGA § 9-3-96, "[i]f the defendant or those under whom he claims are guilty of a fraud by which the plaintiff

_____

[6] Peachtree Hills is structured as a "master condominium," with the Club, Terraces, and the residential condominiums (collectively) each constituting a "master unit."

7

has been debarred or deterred from bringing an action, the period of limitation shall run only from the time of the plaintiff's discovery of the fraud."

> A plaintiff who seeks to toll a limitation period under OCGA § 9-3-96 must make three showings: first, that the defendant committed actual fraud; second, that the fraud concealed the cause of action from the plaintiff, such that the plaintiff was debarred or deterred from bringing an action; and third, that the plaintiff exercised reasonable diligence to discover his cause of action despite his failure to do so within the statute of limitation.

*McArthur v. Beech Haven Baptist Church of Athens*, 368 Ga. App. 525, 530 (2) (890 SE2d 427) (2023). "[A] plaintiff bringing an action for fraud has the burden of showing the existence of facts that would toll the statute of limitation." *Sweet City Landfill, LLC v. Lyon*, 352 Ga. App. 824, 829-830 (2) (835 SE2d 764) (2019) (citation and punctuation omitted).

To establish that Defendants committed actual fraud, Buyers must show "either (1) actual fraud involving moral turpitude,[7] or (2) a fraudulent breach of a duty

---

[7] "Moral turpitude" has been defined as "everything done contrary to justice, honesty, modesty, or good morals." *Huff v. Anderson*, 212 Ga. 32, 34 (2) (90 SE2d 329) (1955).

to disclose that exists because of a relationship of trust and confidence." *King v. King,* 316 Ga. 354, 358 (2) (888 SE2d 166) (2023) (citation and punctuation omitted).

Here, Buyers have not alleged facts supporting the existence of a fiduciary relationship which "encompasses a duty to disclose so that suppression of a material fact which a party is under an obligation to communicate constitutes fraud," i.e., without a showing of scienter or any further act of deception. *Goldston*, 259 Ga. App. at 696 (citation and punctuation omitted). Defendants' alleged legal obligation to disclose the lease agreements, assumed as true, does not, on its own, create a relationship of trust and confidence. See *Lewis v. Alderman*, 117 Ga. App. 855, 855 (2) (162 SE2d 440) (1968) ("[t]he vendor and vendee of property are not, by virtue of such fact, placed in a confidential relationship to each other, but on the contrary are presumed to be dealing at arm's length") (citation and punctuation omitted).

But Buyers alleged that PT Hills Condo "omitted and actively concealed the existence" of the lease agreements pertaining to the Club and Terraces which it "had an affirmative duty to disclose." Specifically, the complaint alleged that PT Hills Condo "failed to provide [Buyers] with a copy of the lease agreements [for] the Club and Terraces," "affirmatively denied the existence of such lease agreements" by

9

representing that they were "not applicable to Peachtree Hills Place" and therefore "not in existence.", and "misrepresented to [Buyers] that they were receiving a copy of 'all contracts' with a term exceeding one (1) year." Given these allegations, at the motion to dismiss stage, we cannot rule out the possibility that Buyers could introduce evidence of actual fraud committed by Defendants that "conceal[ed] the cause of action and cut [Buyers] off from suing, preclude[d] [them], hinder [them], shut [them] out, or exclude[d] [them] to debar [them] from bringing suit[.]" *Carroll v. Piedmont Med. Care Corp.*, 352 Ga. App. 348, 353 (834 SE2d 868) (2019) (citations and punctuation omitted).

But Buyers cannot show that they exercised reasonable diligence to discover their cause of action despite their failure to do so within the statute of limitation, which is the third requirement for tolling. Buyers premise their equitable tolling argument on the purported fraud committed by PT Hills Condo in not disclosing the lease agreements. However, the complaint alleges that the 2020 and 2021 financial statements disclosed the existence of the lease agreements. A statute of limitations cannot be tolled if the allegedly fraudulently concealed information was plainly set forth in documents prepared and available to Buyers who "with reasonable diligence

. . . should have discovered the alleged fraud." *Gerald v. Doran*, 169 Ga. App. 22, 23 (311 SE2d 225) (1983).

*(b) Count II - Continuing Care Provider Claim*

Buyers argue that the trial court erred in dismissing their claim based on Defendants' alleged failure to provide purchasers the "current disclosure statement" required of continuing care providers under OCGA § 33-45-10 at the time of or prior to the payment of the $100,000 Club[8] entrance fee[9] (the "CCRC Disclosure Statement"), such failure entitling them to relief under OCGA § 33-45-12. We agree in part.

To establish that Defendants breached any obligation owed under OCGA § 33-45-10, Buyers must first show that Defendants are a provider under the statute. OCGA § 33-45-1 (12) defines "provider" as the "owner or operator, . . . however organized, . . . of [a] place . . . which owner or operator undertakes to provide continuing care, limited continuing care, or continuing care at home for a . . . fee."

---

[8] While identified as "club entrance fee," the $100,000 fee includes access to the "Terraces."

[9] Specifically, Buyers claim that purchasers who signed their contract prior to September 2017 did not receive any disclosure statements, and the statements that were provided in later years contained material misrepresentations and omissions.

The complaint alleges that Defendant PT Hills Place Club, "through a wholly-owned subsidiary, PT Hills Place Terraces, LLC, . . . operates the Terraces[10]" which supports a conclusion that it qualifies as a continuing care provider under the statute.[11]

(i) Buyers first contend that Defendants breached their duty to disclose actual or potential conflicts of interest regarding the "common ownership, interest, and control" between Defendants and Isakson Living in violation of OCGA § 33-45-10 (d) (2), (3) (A). Under the relevant part of OCGA § 33-45-10 (d) (2) and (d) (3) (A), a provider must disclose "any person having a 10 percent or greater equity or beneficial interest in the provider . . . ." The complaint alleges that "conflicts of interests aris[e] out of Andy Isaksons' [sic] common control and ownership of the financial and operational structure of Peachtree Hills Place." Exhibit A to the complaint, an organizational structure chart of Peachtree Hills Place, shows that while the only

---

[10] It is not clear from the pleadings whether the Terraces provides continuing care or limited continuing care including lodging, food, and nursing care in a facility (§ 33-45-1 (1), (8)) or continuing care at home (§ 33-45-1 (3)), but the factual allegation that the Terraces offers "assisted living, memory care, and skilled nursing on a fee-for-service basis" to residents of PT Hills Place Club supports one or the other.

[11] Buyers do not allege that Defendant PT Hills Condo, as the "owner and developer of the real property forming the Club and the Terraces," is a continuing care provider.

connection between PT Hills Condo and PT Hills Place Club is a lease agreement, and the only connection between PT Hills Place Club and Isakson Living is a management agreement, it also shows that E. Andrew "Andy" Isakson is the sole owner of Isakson Living, a minority owner of PT Hills Condo, and (an or the) owner of PT Hills Place Club. Given these allegations, at the motion to dismiss stage, we cannot rule out the possibility that Buyers could introduce evidence that Andy Isakson did have a 10% or greater interest in Defendants that had to be disclosed. Therefore, we vacate the trial court's dismissal of the claims arising from the alleged non-disclosure under OCGA § 33-45-10 (d) (2) and (d) (3) (A).

(ii) Buyers also alleged that Defendants failed to provide a statement regarding financial reserves in violation of OCGA § 33-45-10 (d) (8), OCGA § 33-45-11 (a), (b). Under those provisions, a continuing care provider is required to maintain and disclose financial reserves in the amount of 25% if and when the provider has full occupancy, 95% occupancy of its residential units, or receives a certificate of authority; until then, the provider must only submit a plan to the Commissioner[12]

---

[12] "Commissioner" means the Commissioner of Insurance of the State of Georgia; see OCGA § 33-1-2 (1).

"demonstrat[ing] that the provider . . . is substantially likely to achieve the required level of financial reserves within five years of opening." OCGA § 33-45-11 (b) (2).

Here, Buyers alleged that Defendants opened the community in early 2020.[13] Applying subsection (b), when Buyers filed suit, Defendants were still within the five-year grace period and not subject to the obligations under OCGA § 33-45-10 (d) (8).

(iii) Finally, Buyers' allegation that Defendants failed to disclose that the $100,000 Club entrance fee would be used to pay PT Hills Condo rent under the lease agreement, ensuring PT Hills Condo a 30% profit margin, does not support a violation of OCGA § 33-45-10 (d) (11) (A), OCGA § 33-45-10 (d) (13). OCGA § 33-45-10 (d) (11) (A) requires a statement of the "proposed application of the proceeds of the entrance fee[.]" Buyers' complaint acknowledged that Defendants provided that the entrance fee "would be used . . . for general working capital purposes . . ." , which includes rent payments to operate the Club and Terraces.[14]

*(c) Count IV - Declaratory Judgment Claims*

---

[13] They do not allege that Defendants meet the conditions in OCGA § 33-45-11 (a).

[14] Thus, the entrance fee does not create "additional costs" to the resident under OCGA § 33-45-10 (d) (13).

Buyers argue that the trial court erred in dismissing their claim for declaratory relief regarding (i) their purported obligation to guarantee a minimum 30% operating margin for Defendants (Count IV(A)) and (ii) the legality of the subcondominium structure of Peachtree Hills Place, specifically, PT Hills Condo's exclusive permanent control of the Residential Association (Count IV(B)). We disagree.

Under Georgia law, declaratory judgment actions are governed by the Declaratory Judgment Act, OCGA § 9-4-1 et seq., which provides:

> In cases of actual controversy, the respective superior courts of this state . . . shall have power, upon petition or other appropriate pleading, to declare rights and other legal relations of any interested party petitioning for such declaration, whether or not further relief is or could be prayed; and the declaration shall have the force and effect of a final judgment or decree and be reviewable as such.

OCGA § 9-4-2 (a). To secure a declaratory judgment,

> the plaintiff must show facts or circumstances whereby it is in a position of uncertainty or insecurity because of a dispute and of having to take some future action which is properly incident to its alleged right, and which future action without direction from the court might reasonably jeopardize its interest. A declaratory judgment may not be granted in the absence of a justiciable controversy. The object of the declaratory

15

judgment is to permit determination of a controversy before obligations are repudiated or rights are violated.

*Oconee Fed. S&L Assn. v. Brown*, 351 Ga. App. 561, 566 (2) (a) (831 SE2d 222) (2019) (citation, punctuation, and emphasis omitted); see also *Effingham County Bd. of Commrs. v. Effingham County Indus. Dev. Auth.*, 286 Ga. App. 748, 749 (650 SE2d 274) (2007). To warrant a declaratory judgment, "the relief sought by a plaintiff must have some immediate legal effect on the parties' conduct, rather than simply burning off an abstract fog of uncertainty." *City of Atlanta v. Atlanta Independent School System*, 307 Ga. 877, 880 (838 SE2d 834) (2020). "Thus, when a party seeking declaratory judgment does not show it is in a position of uncertainty as to an alleged right, dismissal of the declaratory judgment action is proper." *Collins v. Athens Orthopedic Clinic*, 356 Ga. App. 776, 781 (4) (849 SE2d 213) (2020) (citation and punctuation omitted).

Buyers allege that "[u]ncertainty exists on whether [they] are required to pay higher monthly Club fees to satisfy the terms" of the lease agreements between PT Hills Condo, PT Hills Club, and Isakson Living that they claim were "concealed from them during the sales process." But the fact that Buyers lacked knowledge of the

16

imposition of — increasing — fees on Buyers and the application of such fees to rent payments due under the lease agreements at some point in the past does not create uncertainty in the future. To put it bluntly, Buyers seek a declaration that they have no financial obligation to fund a 30% operating margin for Community because they do not like it. The alleged violation of their rights—namely, the non-disclosure of the terms of the lease agreements—lies in the past, and even though Buyers might not know the full scope of the consequences, their obligations are clearly defined, and a declaratory judgment is not the proper means to contest them. See *Richardson v. Phillips*, 302 Ga. App. 305, 309-310 (1) (690 SE2d 918) (2010) (affirming the trial court's dismissal of a declaratory judgment claim where plaintiff "simply aimed to have the trial court decide the propriety of past conduct" by the defendant); see also *Atlanta National League Baseball Club, Inc. v. F.F.*, 328 Ga. App. 217, 221 (761 SE2d 613) (2014) (affirming the trial court's denial of a motion for a declaratory judgment where the event giving rise to defendant's potential liability had already occurred).

Similarly, no uncertainty exists as to Buyers' future rights and obligations under the subcondominium structure. Buyers explicitly claim that PT Hills Condo "retains perpetual control over [residential common] areas to the total exclusion of [more than

200] residents," again, a structure of which they disapprove. But they have not established that this structure creates any insecurity about their actions in the future. See *Cobb County v. Floam*, 319 Ga. 89, 101 (2) (901 SE2d 512) (2024) (no declaratory relief available where plaintiffs cannot show "a need to declare rights upon which their future conduct depends"). Absent a justiciable controversy, the trial court correctly dismissed the claims identified in Count IV. Nevertheless, we find that the court should have dismissed these claims without prejudice. See *Strong v. JWM Holdings, LLC*, 341 Ga. App. 309, 315 (2) (800 SE2d 380) (2017) ("When a trial court is without jurisdiction over a declaratory judgment claim because of a lack of justiciability, the proper disposition is for the trial court to dismiss the claim without prejudice."). And "the involuntary dismissal of a declaratory-judgment action for want of justiciability does not operate as an adjudication on the merits and is instead an issue of subject-matter jurisdiction. Accordingly, dismissal must be without prejudice." *Pinnacle Benning, LLC v. Clark Realty Capital, LLC*, 314 Ga. App. 609, 614-615 (1) (724 SE2d 894) (2012) (citation omitted), disapproved in part on other grounds by *Song v. eGPS Solutions I, Inc.*, 371 Ga. App. 357, 363 (1), n.7 (899 SE2d 530) (2024). Here, the trial court dismissed the declaratory judgment claims with prejudice. We

therefore remand to the trial court for entry of an order dismissing Count IV of Buyers' complaint without prejudice.

*(d) Count V - Rescission Claim*

Buyers contend that the trial court erred by dismissing their rescission claim. We disagree.

"In general, a party alleging fraudulent inducement to enter a contract has two options: (1) affirm the contract and sue for damages from the fraud or breach; or (2) promptly rescind the contract and sue in tort for fraud." *Legacy Academy, Inc. v. Mamilove, LLC*, 297 Ga. 15, 17 (1) (771 SE2d 868) (2015) (citation and punctuation omitted). Where a party elects to rescind the contract, he must do so prior to filing the lawsuit. *Stafford v. Gareleck*, 330 Ga. App. 757, 760 (1) (769 SE2d 169) (2015). And Georgia courts have long recognized that a tender to restore, or offer to restore, the consideration received is a condition precedent to filing a lawsuit for fraud in the inducement. Id; see also *Novare Group v. Sarif*, 290 Ga. 186, 188 (1) (718 SE2d 304) (2011) (demand for rescission, served contemporaneously with the filing of the lawsuit, "cannot be held to to satisfy [this] prerequisite").; *Avery v. Grubb*, 336 Ga. App. 452, 457 (1) (784 SE2d 817) (2016) ("A party seeking to rescind a contract for

19

fraud must restore or tender back the benefits received under the contract, or show a sufficient reason for not doing so. Rescission or attempted rescission is a condition precedent even to bringing an action seeking rescission.") (citations and punctuation omitted). See OCGA § 13-4-60 ("A contract may be rescinded at the instance of the party defrauded; but, in order to rescind, the defrauded party must promptly, upon discovery of the fraud, restore or offer to restore to the other party whatever he has received by virtue of the contract if it is of any value."). "[E]quity will not decree the cancellation of an instrument where anything of value has been received until repayment is either made or tendered[.]" *Taylor, Bean & Whitaker Mtg. Corp. v. Brown*, 276 Ga. 848, 850 (2) (583 SE2d 844) (2003).

Here, even though Buyers alleged that "[t]he full extent of [PT Hills Condo]'s non-disclosures and misrepresentations . . . remain unknown to this day," they learned about the financial and operational structure by late 2022. The defrauded party must act "promptly." OCGA § 13-4-60. But Buyers did not plead that they offered or tendered to Defendants the condominium units that they purchased. Neither did they plead facts to support rescission or an attempt to do so. In fact, they asserted that they "do not have full knowledge of the facts to make an informed

election of remedies and therefore have not offered to restore the benefits received from the purchase transaction" which they claim would be "impractical."[15]

> Where a party who is entitled to rescind a contract on ground of fraud or false representations, and who has full knowledge of the material circumstances of the case, freely and advisedly does anything which amounts to a recognition of the transaction, or acts in a manner inconsistent with a repudiation of the contract, such conduct amounts to acquiescence, and, though originally impeachable, the contract becomes unimpeachable in equity. If a party to a contract seeks to avoid it on the ground of fraud or mistake, he must, upon discovery of the facts, at once announce his purpose and adhere to it. Otherwise he can not avoid or rescind such contract.

*Owens v. Union City Chrysler-Plymouth*, 210 Ga. App. 378, 380 (436 SE2d 94) (1993) (citation and punctuation omitted).

Although the issue of tender is not "a matter raised by a mere general motion to dismiss," Buyers were still required to plead rescission or attempt thereof. *Blower*

---

[15] Buyers pleaded that they inquired with counsel on the availability of rescission, including how much it would cost, which does not amount to a rescission or attempt thereof. See *Southern Prestige Homes v. Moscoso*, 243 Ga. App. 412, 417(4) (532 SE2d 122) (2000) (holding that the trial court erred by finding a letter indicating that "the subject of rescission was under negotiation" was a rescission of the contract).

*v. Jones*, 226 Ga. 847, 849 (3) (178 SE2d 172) (1970).[16] Regardless of any tender, here, based on their allegations in the complaint, Buyers could not possibly introduce evidence of rescission which they concede was merely an option.

2. In light of Division 1 (b) (i), supra, we vacate the trial court's denial as moot of the consideration of the motion for partial summary judgment on Count II and remand for further proceedings in accordance with this opinion.

3. In sum, we affirm the trial court's dismissal of Count I, Count IV, and Count V. We vacate the trial court's dismissal of Count II as it relates to the claims arising from the alleged non-disclosure under OCGA § 33-45-10 (d) (2) and (d) (3) (A), and accordingly vacate and remand the trial court's denial as moot of the consideration of the motion for partial summary judgment relating to Count II. We affirm the trial court's dismissal of Count II as it relates to other claims.

*Judgment affirmed in part, vacated in part, and case remanded with direction.*

*Doyle, P.J., and Markle, J., concur.*

---

[16] See *Stafford v. Gareleck*, 330 Ga. App. 757, 761 (1) (769 SE2d 169) (2015) (reversing trial court's grant of motion to dismiss on issue of rescission where the plaintiff "alleged in his complaint that he gave prompt notice of his intention to rescind; that [the defendant] acknowledged the rescission of the parties' contract; and that he agreed to pay [the plaintiff] additional monies.")